# DECLARATION OF WILLIAM GILSEN

William Gilsen hereby declares and states as follows:

1. I am a forensic accountant contracted by the United States Attorney's Office for the Eastern District of New York and assigned to the Financial Litigation Unit of the Civil Division. I am competent to testify as to the following facts, which are either within my personal knowledge or gained by reviewing the file maintained by the Financial Litigation Unit for the case, <u>United States of America v. Jordan Ross Belfort</u>, CR-98-0859 (AMD) (Eastern District of New York).

2. I have over twenty-four (24) years of experience as a Special Agent with the Internal Revenue Service, Criminal Investigation conducting complex forensic financial crime investigations from both legal and illegal source income as well as illicit source proceeds (narcotic, money laundering, loan sharking and extortion).

3. At the request of the Assistant United States Attorney assigned to this case, I have reviewed, examined and analyzed the financial records, including QuickBooks records, of four (4) companies: Global Motivation, Inc.; JB Global, Inc.; JB Global Holdings, LLC.; and Wolf Holdings Limited. The four companies are either jointly or wholly owned by Jordan Ross Belfort.

4. In my examination of Global Motivation, Inc.'s (hereinafter "GMI") Balance Sheet, it was noted that personal expenditures incurred by Jordan Ross Belfort (hereinafter "Belfort') and Anne Koppe, purportedly the two officers and 50 percent owners of GMI, from November 9, 2011, through and including July 10, 2017, were paid by the company. The personal expenditures were recorded as a Current Asset on the Balance Sheet under various sub-captions of "Distributions."

5. As of August 5, 2017, the balance outstanding for the Current Asset for GMI's general ledger account, "Distributions" was $9,188,876.06. Attached herewith as **Exhibit 1** is a true and correct copy of the Balance Sheet which indicates this figure. <u>See</u> **Exhibit 1**, p. 2 ("Total Distributions 9,188,876.06"). I have not found any documentation to substantiate any form of a promise or agreement to reimburse the

company from Belfort, after analyzing pertinent financial records that were produced by Belfort and his attorneys.

6. A sworn deposition of Belfort was taken on September 15, 2017. I have reviewed the transcript of that deposition. Attached herewith as **Exhibit 2** are true and correct copies of the pages of Belfort's deposition transcript referenced herein.

7. During his deposition, Belfort was asked if he signed any loan agreements or promissory notes with GMI. Belfort responded, "No." Belfort was questioned if GMI had loaned him any money and he responded, "Not to my knowledge." **Exhibit 2**, at P. 117, l. 8 – p. 117, l. 8.

8. Based upon standard accounting principles, any distributions made to and/or for the benefit of the officers or principals of a business, without any loan agreements or promissory notes, and/or without intention to pay back the distributions, should be treated as income to said individual in the year that the distribution(s) by the company were made.

9. An analysis of the general ledger account "Distributions" on GMI's Balance Sheet shows that, together, Belfort and Ms. Koppe had the company pay for their personal expenses in 2013, 2014 and 2015, net of any reimbursements or reversals, in the amounts of $1,422,632.42, $2,792,004.21 and $3,722,580.89, respectively.

10. Belfort's Forms 1040 for the tax years 2013 through and including 2015 reported income from the aforementioned four (4) companies (Global Motivation, Inc.; JB Global, Inc.; JB Global Holdings, LLC.; and Wolf Holdings Limited) as follows: $892,843 for 2013; $1,867,140 for 2014; and $1,774,778 for 2015. Belfort's personal expenses, which were paid by GMI as described in paragraph 9 above, were not reported as income on the respective tax returns in which the expenses were incurred, as required by standard accounting principles.

11. A sworn deposition of Marc Grebe was taken on September 27, 2017. Mr. Grebe is the purported bookkeeper employed by GMI, as well JB Global Holdings, LLC, JB Global, Inc. and Wolf Holdings, Limited. Mr. Grebe was asked if GMI pays for either Belfort or Ms. Koppe's personal expenses. Mr. Grebe answered, "Yes. If you look on the

balance sheet, you'll see that there's a section in the asset section which is distribution. …" P. 61, l. 14 – p. 61, l. 18. Later in the same deposition, Mr. Grebe was asked if the distributions should be treated as income to the officers. Mr. Grebe responded affirmatively: "It is treated as income to the officers." P. 159, l. 17 – P. 159, 21. He further stated that the distributions should be reported on the personal tax returns for the individual officers of the company, in this case, Anne Koppe and Jordan Ross Belfort. P. 159, l. 17 – p. 159, l. 21. Attached hereto as **Exhibit 3** are true and correct copies of the relevant pages from Mr. Grebe's deposition transcript.

12. During his deposition, Belfort was questioned on the employee responsibilities of his two children, Chandler Belfort and Carter Belfort, with respect to GMI. Belfort stated that Chandler Belfort does "nothing" for GMI. **Exhibit 2**, at P. 106, l. 4 – P. 106, l. 6. Regarding Carter Belfort's responsibilities towards GMI, Belfort responded, among other things, that "[it] was more like he studied – more than working, he was studying." Id. at P. 107, l. 7 – P. 107, l. 25. When further questioned about Carter Belfort, Belfort stated 'I wanted him to be a businessman and he wants to be a musician. So it wasn't really working." Id. at P. 108, l. 2 – p. 108, l. 10. Based upon the QuickBooks records of GMI, from January 9, 2012, through and including July 3, 2017, Chandler Belfort received $370,270.20, as a salary. In addition, based upon the same financial records, from September 26, 2014, through and including July 3, 2017, Carter Belfort received $140,000.00 as a salary from GMI. Attached hereto as **Exhibits 4** and **5** are printouts from the QuickBooks records of GMI, demonstrating the amounts paid as salary to Chandler Belfort and Carter Belfort, respectively.

13. Along with examining the Balance Sheet of GMI, I also analyzed the Balance Sheets of JB Global Holdings, LLC, JB Global, Inc. and Wolf Holdings Limited. I noted the General Ledger account "Other Current Assets" on the Balance Sheet of GMI, with a caption "Due From." A Due From account, under standard accounting practice, generally represents funds that are owed by one company to another company which have the same owners. The obligation may either be payments made by the first company on behalf of

the other company or are monetary transfers between companies controlled by the same individual.

14. In the case at hand for GMI, there are both positive balances (funds owed to GMI) as well as negative balances (funds that GMI owes). For example, JB Global Holdings, LLC owes GMI $74,545.36 and Wolf Holdings Limited owes $12,566.43. GMI owes JB Global Inc. $95,043.67. Some of the entries in the General Ledger account "Due From" for JB Global Holdings, LLC, JB Global, Inc. and Wolf Holdings Limited, have been outstanding since December 2011. There does not appear to be any reversals or offsets, removing the funds owed from the books and records.

15. The information on the Balance Sheets of JB Global Holdings, LLC, JB Global, Inc. and Wolf Holdings Limited differs from GMI figures. The Balance Sheets of JB Global Holdings, LLC and Wolf Holdings Limited show that these companies owe GMI $121,216.40 and $739.78, respectively. The Balance Sheet of JB Global, Inc. shows a net amount owed by GMI of $80,694.17.

16. During his deposition, Belfort was asked why there would be transfers between the companies that he and Anne Koppe own and control. Belfort responded that, "In the normal course of business, I guess Mark does whatever he has to do, so -- you know – in the normal course of business. I really don't know." **Exhibit 2**, at P. 55, l. 8 – p. 55, l. 16.

17. During Mr. Grebe's deposition, Mr. Grebe was questioned whether there were ever any transactions that occurred between the four (4) corporations. Marc Grebe responded, "There are. There's been loans put on from one company to another. However, it's important for me to point out that the further I reviewed that, I don't think that's correct. I think it's a distribution to an officer and that officer then reinvests it in the other company." **Exhibit 3**, at P. 31, l. 24 – p. 32, l. 8.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 15, 2018, at Brooklyn, New York.

WILLIAM GILSEN